STATE EX REL. CHARLES E. SUMNER v. MARTIN B. McFILLAN.

PROCEEDING TO DEPRIVE AN OFFICER OF HIS OFFICE FOR VIOLATING THE PROVISIONS OF THE ACT PASSED APRIL 8, 1896.

Under the act entitled, "An act to prevent corrupt practices at election," 92 O. L., 192, an elector is not entitled to file the complaint and application forming the basis of a proceeding to deprive an officer of his office because of violations of the provisions of said act, unless such elector shall have been entitled to vote for or against such officer at the election at which he was elected.

PARKER, J.

This is an action instituted under an act entitled "An act to prevent corrupt practices at elections," passed on April 8, 1896, 92 O. L., 123. The case is submitted to us upon a general demurrer to the amended petition. The real question debated to us is as to whether the person who lodges the complaint against Martin B. McFillan, defendant, is one authorized under the statute to set this proceeding in motion. The first section of the act provides the maximum amount that may be expended by candidates for different offices, to secure their nomination or election, or both. The third section of the act provides that candidates shall make out and verify itemized statements of the amounts that they shall have expended to secure their nominations to office, and section four contains a provision with reference to their securing their election to office. Section five provides:

"Any person failing to comply with the provisions of the third section or of the fourth section of this act, shall be liable to a fine not exceeding one thousand dollars, to be recovered, with costs, in an action,

brought in the name of the state by the attorney-general or by the prosecuting attorney of the county of the candidate's residence, the amount of said fine to be fixed within such limits by the jury, and to be paid into the school fund of said county.''

It also provides in sections seven, eight and nine, that an action of the character of this before us may be instituted to effect the results provided by section eleven, which reads as follows:

''If it shall be determined in any such action that any one or more of the charges set forth in the petition has been sustained, judgment shall be rendered declaring void the election of such defendant to such office and ousting and excluding him from such office and declaring the office vacant, and such vacancy shall thereupon be filled in the manner provided by law or by the constitution of this state with relation to filling vacancies occurring in such office, and judgment shall also be rendered against such defendant for the costs of the action, but if no one of such charges be sustained, judgment shall be rendered against such applicant and his sureties on the bond or bonds for the costs of such action.''

There are other provisions in the statute relating to the duties of campaign committees, or the reports that they are required to make, prescribing what shall be unlawful upon their part and providing penalties for such acts, and in section 23 is provided a penalty by fine and imprisonment for unlawfully conniving at the paying, contributing, promising or offering, any money or thing of value for the purpose of procuring, facilitating, or defraying any fees or expenses in connection with the naturalization of any alien, etc. It will be seen that the statute is penal in its character. I should have said that preliminary to the institution of an action of this character, something is required to be done by an elector; and the provisions on that subject are as follows, being contained in section 7:

''At any time during the term of office of any occupant of any office created by the constitution or laws of this state to be filled by popular election and hereafter filled by such election, pursuant to the constitution or laws of this state, (other than the office of member of either house of the general assembly or of the congress of the United States), any elector entitled to vote at such election may present an application in writing, verified by his affidavit, to the attorney-general, setting forth one or more of the following charges against such public officer, to-wit:'' and then follows the several charges that may be preferred by this complaint, after which the statute proceeds: ''and such application shall be accompanied by a bond in favor of the state of Ohio in the penal sum of one thousand dollars, subscribed by two sureties, who shall justify as freeholders of the state and in double the amount of such penalty exclusive of all their debts and liabilities and property exempt by law from levy and sale on execution, such bond to be conditioned for the payment of all the taxable costs for which the state, such applicant, or such occupant of such office may become liable on account of such action, if none of such charges shall be sustained therein.''

Section 8 provides that: ''It shall be the duty of the attorney-general within ten days after the receipt of such application and bond, to begin an action against such public officer, or to instruct the prosecuting attorney of the county in which such public officer resides to bring such action within ten days,'' etc.

State ex rel. Sumner v. McFillan.

Section 9 provides that if neither the attorney-general nor the prosecuting attorney institutes the action, it may be filed by the person who made the complaint or application.

This proceeding, which is in the nature of a *quo warranto*, as provided by section 8, is instituted by the prosecuting attorney of Lucas county and it sets forth with reference to these preliminary steps the following facts:

"Charles E. Sumner, prosecuting attorney, in and for the county of Lucas and state of Ohio, who sues for the state of Ohio in this behalf, comes here before the judges of the circuit court of the state of Ohio, at the term of * * * A. D. 1897, and on the 11th day of May, A. D. 1897, at the said term and on the day aforesaid gives the court to understand and be informed, that an application in writing, duly verified by the affidavit of said applicant, and in accordance with the provisions of the statutes in such case made and provided, to have an action brought against the defendant Milton B. McFillan, the member of the board of education for the school district of the city of Toledo for the fifteenth ward, to declare the said office of member of the board of education for the said fifteenth ward vacant, has been duly made to the attorney general of the state of Ohio by an elector of the city of Toledo, a resident of the tenth ward of said city, entitled to vote at the popular election held on the fifth day of April, A. D, 1897, in the school district of the city of Toledo, but not entitled to vote for said defendant. That the school district of the city of Toledo is divided into fifteen wards, and under the laws of the state of Ohio, in odd years a member of the board of education is elected from the odd-numbered wards and no election for member of the board of education of said school district is held in the even numbered wards, except in even years. That the tenth ward of the city of Toledo is an even numbered ward and no primary for nominating a member of the board of education, and no election for electing a member of the board of education of the tenth ward of said city of Toledo was held in the spring of 1897."

The petition then proceeds to state that this application is "accompanied by a good and sufficient bond duly executed according to law." It then sets forth that the prosecuting attorney in instituting this suit, is proceeding under the instructions of the attorney general. It recites what occurred at the caucus and at the election—that McFillan was nominated and was elected as a member of the board of education of the school district of the city of Toledo, and it charges, in the first count or cause of action, that:

"The defendant wilfully stated that an untruth in said statement, duplicate and affidavits in this, that said defendant did not set forth fully and completely in detail each and all sums of money and other things of value contributed, disbursed, expended and promised by him, and to the best of his knowledge and belief, and by any other person or persons by his procurement in his behalf, wholly or in part, in endeavoring to secure or in any way in connection with his nomination to such office," etc., following the lines of the statute very closely as contained in section seven.

The second cause of action, adopting the allegations of the first, charges a like untruthful statement of the amount expended and contributed to procure his election.

The third cause of action, adopting these allegations, charges that

he expended in securing his nomination and election more than the amount permitted by section 1 of the act to be thus expended.

As I have said, there are certain preliminary steps which we regard as essential and necessary prerequisites to the institution of this action on the part of the attorney-general or of the prosecuting attorney, viz.: the filing of this complaint or application and the giving of this bond by a person authorized by the statute to set the action in motion. It becomes important, therefore, to consider the provisions of the first clause of section 7, which points out what persons are authorized to thus proceed, I will read that again:

"At any time during the term of office of any occupant of an office created by the constitution or laws of this state to be filled by popular election and hereafter filled by such election, pursuant to the constitution or laws of this state (other than the office of member of either house of the general assembly or of the Congress of the United States), any elector entitled to vote at such election may present an application in writing," etc.

The determination of the question turns upon the construction to be given to the words "such election." The application must be filed by an elector entitled to vote *at such election.* The authority is limited, and the extent of this limitation is the thing to be determined: Any citizen, or any inhabitant of the state, may not file this application—it may only be filed by an elector. And any elector may not file it: It must be an elector entitled to vote "at such election." Now, what election? According to our view of the matter, after careful consideration, the statute means that the person authorized to file the application must be one entitled to vote at the election at which the candidate who e office is to be affected by the proceeding was elected—to take a part in that election—the casting of the ballots which determined whether or not he should be nominated or elected to that office. It will be observed that it does not read "such *an* election," but "such election." The word *such,* in this clause, and in many other places in the statute according to our view, is used as a demonstrative or distinguishing term, to point out something that has gone before and been previously mentioned in the statute, and not as it is usually used, as a term of comparison. It must have been a favorite word with the author of this statute. I call attention to the senses in which it is used and the number of times which it is used in this same section 7. It will be observed that it is used frequently in the sense of "that" or "said" as applied to things that have been mentioned and gone before.

Taking up the reading of the section where we just left off: "verified by his affidavit, to the attorney-general, setting forth one or more of the following charges against such public officer, to-wit: That such officer in seeking nomination or election, or both, to such office violated one or more of the provisions of the foregoing sections of this act by expending, contributing or promising or offering an amount in excess of the sum allowed by his act; or that such officer wilfully stated an untruth in one or more of the statements and duplicates and affidavits filed by him pursuant to this act after such nomination or election; or that any other act or acts declared unlawful or made punishable by any law of this state were committed by such officer, or by his agent or agents, or with his or their consent or connivance by some committee, or organization, or political party of which party he was the nominee, or the

agent or agents of any such committee or organization or party, with intent to secure or promote his nomination or election; and further setting forth that the applicant desires said attorney-general to bring an action to have such public office declared vacant on account of such violation or violations of law, and such application shall be accompanied by a bond in favor of the state of Ohio, in the penal sum of one thousand dollars, subscribed by two sureties, who shall justify as freeholders of the state and in double the amount of such penalty exclusive of all their debts and liabilities and property exempt by law from levy and sale on execution, such bond to be conditioned for the payment of all the taxable costs for which the state, such applicant, or such occupant of such office may become liable on account of such action, if none of such charges shall be sustained therein.''

The word is used nineteen times, if I have not missed any in the count, in that one section, and it is used frequently all through the act. Any other construction of this act would require us to hold that a person not at all interested, or if interested in a very remote degree, might set this action on foot. For instance women are electors entitled to vote for members of the board of education, and a woman elector in a remote portion of the state if voting at a general popular election held in the spring when members of the board of education are voted for—if the construction contended for here by the State were to be maintained—might file a complaint attacking the title of the mayor of this city—or of any other city, to his office, on account of a violaion of the provisions of this statute. So, too in the case of a special election. If, for instance, there were a vacancy in the office of a member of the board of education in one of the wards of this city and an election were held to fill that vacancy, if one entitled to vote ''at such *an* election'' could institute those proceedings, then any one in the state of Ohio entitled to vote for an officer of that character—certainly any one in the city of Toledo entitled to vote for a member of the board of education of the city of Toledo at any election, would be authorized to file this application. We do not think that that was the purpose of the legislature or that it is a fair construction of the provisions of this statute, and our conclusion we think is sustained by a consideration of section 13 of the act. It will be observed that section 7 omits in its mention of the officers against whom this proceeding may be instituted, members of either house of the general assembly or of the congress of the United States. They are subject to all the other provisions of the statute, but proceedings against them to deprive them of their office if they shall have violated the provisions of the statute, are somewhat different, that is to say, they are to be proceeded against by a contest in the usual manner, the violation of the statute forming the basis of the charges. Section 13 reads as follows:

''The election of any person to either house of the general assembly of the state of Ohio may be contested by an elector entitled to vote at the election at which he was chosen, on any of the grounds for which elections to other offices are by the foregoing provisions of this act required to be avoided.''

We think that the same meaning is to be attached to the words ''such election'' contained in section 7. The statute clearly does not mean that any person entitled to vote upon the day of that election may file this application, since in various places in the statute the legislature

has distinguished between the election and the day of the election, and we think designedly.   For instance, in section 1 of the act:

"That no candidate for representative in the congress of the United States, or for any public office·created by the constitution or laws of this state to be filled by popular election, shall, by himself or by or through any. agent or agents, committee or organization, or person or persons whatsoever, in the aggregate,· pay out, give, contribute or expend, or offer or agree to pay, give, contribute or expend any money or other valuable thing in order to secure or aid in securing, his nomination or election, or to secure or aid in securing to defeat or aid in defeating the nomination or election or both the nomination and election, of any other person or persons to any office to be voted for *on the day* of the same election," etc.

We think it would be a proper use of terms for one to say:  "I voted at the election for governor, but I did not vote at the election of member of the legislature, held on the same day."   We think the words "such election" may be used in that sense and are so used in this statute. One might vote at the general spring election upon the election of member of the board of education and yet might not be an elector entitled to vote, and therefore might not vote at the election for mayor or other officer held on the same day.

I presume the same thing is true in the city of Toledo, as throughout the state and in the rural districts, that the election for members of the board of education is held somewhat independently of the election for other officers; that is to say, that they have different boards of election, different returns of election, and make their returns to different officers and tribunals, and, in that case, the election held for member of the board of education is distinct from the electon held of other officers, so that it might well be said that one voted at that election on that day of election, and did not vote at another election held upon the same day. It appearing therefore from the amended petition that while the person who lodged this complaint to the attorney-general was entitled to vote in a district of the city of Toledo on the day on which this election was held, but that he was a resident of a ward of the city of Toledo in which there was no election held for a member of the board of education, and that he was not entitled to vote at the election held in the fifteenth ward, at which Martin B. McFillan was elected; we hold that he was not authorized under this statute to cause this proceeding to be instituted by the filing of the complaint and bond, and that therefore the proceeding is without proper foundation or basis.

The general demurrer to the petition will be sustained.   Judgment will go against the state for the costs.

*Chas. E. Sumner*, for the Plaintiff.

*Hamilton & Kirby* and *C. F. Watts*, for Defendant.